UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MICHAEL BARRETT BOESEN,

                    Plaintiff,

          v.

UNITED SPORTS PUBLICATIONS, LTD.,

                    Defendant.

Case No.: 2:20-CV-1552

Hon. Allyne R. Ross

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT AND DEMAND THAT PLAINTIFF POST A BOND PURSUANT TO LOCAL CIVIL RULE 54.2**

Moish E. Peltz
Paul M. O'Brien
Falcon Rappaport & Berkman PLLC
1185 Avenue of the Americas, Third Floor
New York, New York 10036

265 Sunrise Highway
Suite 50
Rockville Centre, New York 11570
(516) 599-0888
mpeltz@frblaw.com
pobrien@frblaw.com

*Counsel for Defendant*
*United Sports Publications, LTD.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 1

LEGAL STANDARD............................................................................................... 4

ARGUMENT ON MOTION TO DISMISS ................................................................... 5

  POINT I................................................................................................................ 5

  PLAINTIFF'S CLAIM OF COPYRIGHT INFRINGEMENT FAILS AS A MATTER OF LAW BECAUSE FAIR USE IS A COMPLETE DEFENSE TO ALLEGATIONS OF INFRINGEMENT ................................................................................................ 5

    A.  Purpose and Character of Use ................................................................... 5

    i.  Transformative ......................................................................................... 6

    ii.  Commercial Benefit ................................................................................. 8

    iii.  Bad Faith ............................................................................................... 8

    B.  Nature of the Work.................................................................................... 10

    C.  Amount and Substantially of the Use in Question ..................................... 11

    D.  Potential Effect of the Use on the Market or Value ................................... 11

    E.  Totality of Factors ................................................................................... 13

  POINT II ............................................................................................................ 14

  PLAINTIFF'S DEMAND FOR STATUTORY FEES AND ATTORNEY FEES FAILS AS A MATTER OF LAW DUE TO PLAINTIFF'S LATE COPYRIGHT REGISTRATION ......... 14

ARGUMENT ON MOTION FOR BOND ................................................................... 14

  PLAINTIFF SHOULD BE REQUIRED TO POST A BOND IN THE AMOUNT OF $50,000 AS SECURITY FOR DEFENDANT'S COSTS AND ATTORNEYS' FEES ....................... 14

    A.  Plaintiff's Claim is Meritless..................................................................... 15

    B.  Other Factors to Consider ........................................................................ 15

    C.  FRCP Rule 68's Cost-Shifting Provision................................................... 16

CONCLUSION.................................................................................................... 17

## TABLE OF AUTHORITIES

### Cases

*Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1078 (2d Cir. 1992) .................................................. 10

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ..................................................................................... 4

*Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015) ................................................ 10

*Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 96 (2d Cir. 2014) ................................................ 6

*Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F.Supp.3d 399, 352 (S.D.N.Y. 2017) ......... 6

*Blanch v. Koons*, 467 F.3d 244, 254 (2d Cir. 2006) ....................................................................... 8

*BWP Media USA, Inc.*, 196 F. Supp. 3d ......................................................................................... 8

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) .............................................. 6, 11

*Capitol Records, LLC v. ReDigi Inc.*, 910 F.3d 649, 662 (2d Cir. 2018) ..................................... 11

*Cariou v. Prince*, 714 F.3d 694, 709 (2d Cir. 2013)................................................................ 10, 11

*Cruz v. Am. Broad. Cos.*, 2017 WL 5665657, (S.D.N.Y. 2017)................................................... 16

*Janik v. Spin Media, Inc.*, 2017 WL 6021644, at *1 (S.D.N.Y. 2017) ........................................ 17

*Konangataa v. NBCUniversal Media, LLC*, 2017 WL 2684067, at *2 (S.D.N.Y. 2017) ............ 17

*Lee v. W Architecture and Landscape Architecture, LLC*, 2019 WL 2272757, at *4 (E.D.N.Y.

     2019) ......................................................................................................................................... 17

*Lombardo v. Dr. Seuss Enterprises*, L.P., 279 F.Supp.3d 497, 504 (S.D.N.Y. 2017), *aff'd*, 729 F.

     App'x 131 (2d Cir. 2018)............................................................................................................. 5

*N'Jai v. New York State Higher Educ. Services Corp.*, 214 F.R.D. 251, 251-52 (E.D.N.Y. 2003)

     ................................................................................................................................................... 15

*Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 24 (1st Cir. 2000)....................................... 11

*Pereira v. Kendall Jenner, Inc.*, 17-cv-6945, Dkt. No. 16 (S.D.N.Y. 2017) ............................... 16

*Sadhu Singh Hamdard Tr. v. Ajit Newspaper Adv., Mktg. & Communications, Inc.*, 2008 WL
    11415934, at *3 (E.D.N.Y. 2008) ................................................................................ 16

*Selletti v. Carey*, 173 F.3d 104, 110 (2d Cir. 1999) .................................................... 16

*Tabak v. Idle Media, Inc.*, No. 17-cv-8285 (AT) (Oct. 31, 2017) ................................. 16

*TCA Television Corp. v. McCollum*, 839 F.3d 168, 180 (2d Cir. 2016) ........................ 6

*Teri v. Oxford Mgt. Services, Inc.*, 2013 WL 132660, at *2 (E.D.N.Y. 2013) ............ 15

*Walsh v. Townsquare Media, Inc.*, 2020 WL 2837009, (S.D.N.Y. 2020) .............. 7, 12

WestPoint-Pepperell, 945 F.2d ........................................................................................ 5

## Statutes

17 U.S.C. § 107 .............................................................................................................. 5, 11

*17 U.S.C.A § 412* ........................................................................................................ 14, 15

## PRELIMINARY STATEMENT

Defendant, United Sports Publications, LTD ("Defendant") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff's Amended Complaint (the "Amended Complaint," DE 20) pursuant to the Federal Rules of Civil Procedure ("FRCP") 12(b), and for an Order requiring Plaintiff, Michael Boesen ("Plaintiff") to post a bond as security for costs and attorneys' fees under Local Civil Rule 54.2.

In his Amended Complaint, Plaintiff alleged that Defendant infringed his copyright in a photograph of a young Caroline Wozniacki, a professional tennis player. However, the subject photograph is a cropped, low-resolution version of Plaintiff's alleged copyrighted photograph. Ms. Wozniacki posted the photograph at issue to her public Instagram account with a caption announcing her retirement from professional tennis. Defendant, a news reporting organization, and as part of a news article which reported on Ms. Wozniacki's retirement, embedded Ms. Wozniacki's entire Instagram post, a portion of which included the cropped, low-resolution version of the photograph. Without prior demand or warning, Plaintiff brought suit.

For the reasons demonstrated below, Plaintiff's claim of copyright infringement fails as a matter of law (and as pleaded) because: (i) Defendant's uses of the work are protected under the doctrine of fair use; and (ii) Plaintiff was late in filing its copyright registration for the photograph at issue here and therefore some of the remedies he seeks in the Amended Complaint are unavailable to him. Lastly, this Court should enter a bond against Plaintiff.

## STATEMENT OF FACTS

On December 6, 2019, the prominent (and former WTA World No. 1 and Grand Slam Champion) professional tennis player Caroline Wozniacki announced her retirement from professional tennis in a public post on her verified Instagram account (the "Instagram Post"). Ms.

Wozniacki's Instagram Post included a photograph of herself (the "Photograph") and a corresponding caption announcing and explaining her reasons for her retirement from professional tennis (the "Instagram Caption"). DE 20 at ⁋ 16.

Later that same day, Defendant published a news article on it's website, longislandtennismagazine.com, entitled "Wozniacki Plans to Retire After Australian Open" (the "Article"). DE 20 at ⁋ 17. The Article featured approximately 240 words of original commentary relevant to the then-breaking news that Ms. Wozniacki had announced her retirement from competitive tennis, and embedded the Instagram Post (including its written captions, together with a cropped, low-resolution photograph of the then young tennis player Caroline Wozniacki early on in her career). The Article also quoted from Wozniacki's Instagram Caption. Separate from the subject photograph, the Article also featured a prominent headline photo of Ms. Wozniacki, which is not at issue in this litigation (meaning that the viewers of the Article would first see a larger and more prominent photograph of Ms. Wozniacki before reading down to the where the Instagram Post was embedded, and seeing the Photograph embedded in the Instagram Post). The Article also noted that "Wozniacki made the announcement [of her retirement] in an Instagram post…..'" Thereafter, as part of the Article, Defendant "embedded" the Instagram Post itself. The following is an excerpt from the Article:

> Former Australian Open champion and world number one Caroline Wozniacki announced on Friday that she will be retiring following the 2020 Australian Open.
>
> Wozniacki made the announcement in an Instagram post, and in an appearance on ABC's "Good Morning America."
>
> "In recent months, I've realized that there is a lot more in life that I'd like to accomplish off the court," she said on Instagram. "Getting married to David [Lee] was one of those goals and starting a family with him while continuing to travel the world and helping raise awareness about rheumatoid arthritis (project upcoming) are all passions of mine moving forward. So with that, today I am

2

> announcing that I will be retiring from professional tennis after the Australian Open in January. This has nothing to do with my health and this isn't a goodbye, I look forward to sharing my exciting journey ahead with all of you!"
>
> Wozniacki **began her professional career in 2005**, and has accumulated more than 630 singles victories and 30 titles, including her lone Grand Slam title in Melbourne in 2018. That same year, she was diagnosed with rheumatoid arthritis, and battled injuries in 2019 where she played only 35 matches.
>
> "I want to thank with all my heart, the fans, my friends, my sponsors, my team, especially my father as coach, my husband, and my family for decades of support!," she said. "Without all of you I could have never done this!"

DE 20 at ⁋ 17, Emphasis added.

By embedding the Instagram Post within the Article, Defendant allowed its viewers to read Ms. Wozniacki's actual retirement announcement, as published through her public Instagram Post. Thereafter, from the embed, users could view the Instagram Post in-line with the Article. This feature of embedding the Instagram Post gave users of Defendant's Website several additional benefits, including the direct ability (i.e., without leaving the Article) to: like, share, archive, read user comments, and comment on the Instagram Post. The Instagram Post, as embedded in the Article, identified Instagram as the source of the Instagram Post, and allowed users to "click through" a hyperlink to view the Instagram Post directly on the Instagram platform itself.

On March 25, 2020, Plaintiff commenced this action by filing a Complaint (DE 1), and thereafter it's Amended Complaint. DE 20. In the Complaint, Plaintiff alleges that he is the author of the Photograph embodied in Ms. Wozniacki's Instagram Post and claims to be the sole owner of all right, title, and interest in the Photograph. DE 20 at ¶¶ 14-15. Further, Plaintiff alleges that Defendant's embedding of the Instagram Post has reproduced and publicly displayed the Photograph in a manner amounting to actionable copyright infringement. DE 20 at ¶¶ 21-22.

The Complaint asserts infringement of Copyright Registration Number VA 2-190-386. DE

20 at ¶15, referred to herein as the "Registration"). Review of the public catalog of the Copyright Office for the Registration reveals that Plaintiff claims the two photographs described by the Registration were created in 2002, and were first published on December 4, 2002. However, the claimed effective date of registration for those photographs was not until December 27, 2019, approximately 17 years later. December 27, 2019 was only several months before the filing of the Complaint (and, importantly, *after* both Ms. Wozniacki's Instagram Post and the Article which embedded it were published). A review of Plaintiff's own social media accounts in 2012 and 2017 shows that Plaintiff previously posted the Photograph at issue on his public Facebook page numerous times, although some of those posts have since been deleted. **Exhibits A.**

On July 15, 2020, Defendant filed its answer to the Complaint and served a Rule 68 Offer of Judgment for the amount of $1,001. **Exhibit B**. The Rule 68 Offer of Judgment was not accepted by Plaintiff. Defendant has not filed an answer to the Amended Complaint.

## LEGAL STANDARD

Rule 12(b)(6) compels dismissal of the Amended Complaint.  The standard for assessing a motion to dismiss requires that the plaintiff plead sufficient facts "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a court must "[accept] the allegations contained in the complaint as true and [draw] all reasonable inference in favor of the nonmoving party," *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999), a complaint that offers mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S at 678.  To survive a motion to dismiss, plaintiff's well-pleaded facts must "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

In addition to the well-pleaded "facts stated on the face of the complaint," on a motion to dismiss the Court may consider "documents appended to the complaint or incorporated in the

complaint by reference," and "matters of which judicial notice may be taken." *WestPoint-Pepperell*, 945 F.2d at 44 (citation omitted).  Judicial notice may also be taken of internet materials, including websites and social media posts. *See supra* n. 1, 3.

## ARGUMENT ON MOTION TO DISMISS

### POINT I
### PLAINTIFF'S CLAIM OF COPYRIGHT INFRINGEMENT FAILS AS A MATTER OF LAW BECAUSE FAIR USE IS A COMPLETE DEFENSE TO ALLEGATIONS OF INFRINGEMENT

Defendant is a newsgathering organization, and it's reporting of Ms. Wozniacki's retirement announcement is protected by the First Amendment and the doctrine of fair use. "Numerous courts in this district have resolved the issue of fair use on a motion for judgment on the pleadings by conducting a side-by-side comparison of the works at issue." *Lombardo v. Dr. Seuss Enterprises*, L.P., 279 F.Supp.3d 497, 504 (S.D.N.Y. 2017), *aff'd*, 729 F. App'x 131 (2d Cir. 2018).

When determining whether a secondary use of a copyrighted work is protected under the doctrine of fair use, a court considers the following factors, "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.

Considering the familiar fair use factors, Defendant's use of the Photograph is protected under the fair use doctrine, especially given its factual and informational content published by a newsgathering organization.

### A.  Purpose and Character of Use

The purpose and character of the use factor involves three subfactors, namely whether the

use is, (i) transformative; (ii) for commercial purpose; or (iii) in bad faith. *See NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 477-78 (2d. Cir. 2004).

### i.   Transformative

To determine if a secondary use is transformative courts look at "whether the new work merely supersedes the objects of the original creation … or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). A display of a copyrighted image "may be transformative where the use served to illustrate criticism, commentary, or a news story about that work." *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F.Supp.3d 399, 352 (S.D.N.Y. 2017).

A use is transformative if it does something more than repackage or republish the original copyrighted work." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 96 (2d Cir. 2014). "[T]he critical inquiry is whether the new work uses the copyrighted material itself for a purpose, or imbues it with a character, different from that for which it was created." *TCA Television Corp. v. McCollum*, 839 F.3d 168, 180 (2d Cir. 2016).

Applying that standard, Defendant's use of Ms. Wozniacki's public Instagram Post, which displayed a version of the Photograph, is clearly transformative. Primarily, the use of the copyrighted material plainly falls within one of the permitted statutory examples of transformative use, namely, news reporting. Plaintiff embedded Ms. Wozniacki's Instagram post for the purpose of truthfully indicating to its readers the origin of the breaking news of Ms. Wozniacki's retirement, namely her announcement of her retirement via the Instagram Post.  The Article was further transformative of the Instagram Post given that the Article analyzed and commented on the Instagram Post, reported on Ms. Wozniacki's successful career as a tennis player, and her stated

6

rationale offered for her retirement from the sport (as illustrated by her usage of a photo from early in her career).

This matter is similar to *Walsh v. Townsquare Media, Inc.*, 2020 WL 2837009, (S.D.N.Y. 2020). In *Walsh*, the court found that an online news outlet's use of a photograph in an Instagram post that was embedded in a news article was transformative. *Walsh*, 2020 WL 2837009, at *5. The article at issue in *Walsh* included three separate embedded Instagram posts made by the fashion icon Tom Ford and celebrity rapper Cardi B. *Id.* at * 2. XXLmag.com posted an article which discussed Cardi B's collaboration with Tom Ford, critics' reactions to the partnership, and Cardi B's then-recent altercations with other celebrities. *Id*. Plaintiff Walsh sued XXL alleging infringement of her photographs of Cardi B at New York Fashion Week, relating to XXL's unlicensed publication of her photographs. The court held that the "Defendant published the Post in order to provide readers with the original social media interactions reported on by the Article, and included the Photograph as a necessary part of the Post" and found in favor of fair use. *Id*. at *5.

Like defendant XXL in *Walsh*, United Sports Publications' use of the Instagram Post, incidentally featuring the Photograph, was integral to its news reporting, and its use of the original social media post was instrumental to orient its readers as to the origin of the news it was reporting, the newsworthy Instagram Post itself.

Further, like the defendant in *Walsh,* United Sports Publications did not publish the Photograph for the purpose of presenting the content of the Photograph itself (i.e., a young Wozniacki playing tennis). Rather, Defendant embedded the entire Instagram Post, which incidentally contained the Photograph, because the Instagram Post (i.e., the breaking news that Ms. Wozniacki was retiring from tennis) was the very thing that Defendant was reporting upon.

*See Id.* ("Defendant published the Post in order to provide readers with the original social media interactions reported on by the Article, and included the Photograph as a necessary part of the Post."). The Court in *Walsh* further held that, "[m]erely displaying the Post without the Photograph would have been nonsensical in appearance as well as potentially impossible, given that the Post is embedded and hyperlinked, rather than inserted as an image." *Id.*

Based on the foregoing and the Southern District's decision in *Walsh*, it is evident that Defendant's use is transformative.

### ii.   Commercial Benefit

While Plaintiff might argue that Defendant used the Photograph to achieve a commercial benefit, since Defendant is a for-profit publisher, this sub-factor is of less significance when the use of the work is transformative. *Blanch v. Koons*, 467 F.3d 244, 254 (2d Cir. 2006) (if the work is "substantially transformative", the "other factors, including commercialism, are of less significance"). Further, the Supreme Court has "stated that ''[t]he crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of copyrighted material without paying the customary price. *BWP Media USA, Inc.*, 196 F. Supp. 3d at 407–08 (quoting *Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 562 (1985).

Defendant did not use the Photograph as a photo, but only as it was embedded within the Instagram Post, and below another headline photo of Ms. Wozniacki. Resultingly, there would be little, if any, commercial benefit to Defendant from using the Photograph. Even then, it is not of importance if Defendant profits from the Article since its use was transformative, outweighing the commercial nature of its use.

### iii.   Bad Faith

It is beyond comprehension to presume that Defendant acted in bad faith in embedding the Instagram Post at issue here. In the day and age of social media, newsworthy events are shared and re-shared by countless Internet users and news outlets on a daily basis. Often times, the most effective means of sharing that news in real time, and to foster debate and conversation about such newsworthy events, is to embed the very social media content that the buzz is all about. Embedding other social media posts is a crucial part of allowing the smooth functioning of the Internet, and finding such ordinary conduct to be in bad faith would Plaintiff alleges only boilerplate allegations of bad faith, supposing that bad faith is evident because Defendant used the Photograph without Plaintiff's consent. When Defendant embedded Ms. Wozniacki's Instagram Post, Defendant had no way of knowing that the Photograph may have been owned by Plaintiff, nor that Ms. Wozniacki's Instagram Post would have contained an apparently unlicensed photograph.

Further, Defendant in no way attempted to take credit for the Photograph. Defendant included the entire Instagram Post in its Article and provided a link back to that Instagram Post, which included the Photograph. Viewers of the Article can easily ascertain that the Photograph was originally posted on Instagram through Ms. Wozniacki's public Instagram Account. As such, Defendant did not act in bad faith.

Instead it is clear that through this litigation, it is Plaintiff that is acting in bad faith. Plaintiff alleges that Ms. Wozniacki was not licensed to use the Photograph. See DE 20 at ¶ 16. If Ms. Wozniacki was not licensed to use the Photograph, then Plaintiff failed to exercise reasonable remedies available to him to quickly and efficiently remove the photo from the Instagram platform by taking actions aimed at the source of the public posting of the Photograph on Instagram – Ms. Wozniacki. For example, Plaintiff could have submitted a DMCA complaint directly through Instagram (https://help.instagram.com/697328657009330?helpref=uf_permalink ) which would

have quickly compelled Instagram to take down the photo and immediately removed the Photograph from being used on the Instagram platform, whether as an embed or otherwise. Plaintiff could have directly sued Ms. Wozniacki for infringement, and sought damages or injunctive relief to remove the photograph from Instagram (and the Court may take judicial notice that no such case appears on any docket). Therefore, this Court must reach the conclusion that Plaintiff is acting in bad faith and has no actual interest in removing the photo from the internet, and is instead intentionally allowing the Photograph to remain up on the Instagram Post, and instead operating under a scheme to extort news organizations that report on the Instagram Post.

## B.  Nature of the Work

To determine whether the nature of the copyrighted work supports a finding of fair use, courts look to "(1) whether the work is expressive or creative, ... with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower." *Cariou v. Prince*, 714 F.3d 694, 709 (2d Cir. 2013) (quoting (internal citations omitted). The Second Circuit has determined that this "factor has rarely played a significant role in the determination of a fair use dispute." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015).

Here, the Photograph was previously published in various newspapers and/or magazines and was available on Plaintiff's public Facebook page (presumably, for several years) and Ms. Wozniacki's public Instagram account. Additionally, the Photograph has been in existence for at least ten years. Nothing about the nature of the Photograph disturbs a finding of fair use. *See Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1078 (2d Cir. 1992) (finding published work available to the

general public generally favors a determination of fair use). As such, this factor counts in Defendant's favor.

### C. Amount and Substantially of the Use in Question

This factor considers "the amount and substantiality of the portion used in relation to the copyrighted work as a whole" (17 U.S.C. § 107) and asks "whether the quantity and value of the materials used [ ] are reasonable in relation to the purpose of the copying." *Cariou*, 714 F.3d at 710.

Defendant's use of the Photograph supports a finding of fair use as it "employs no more of the copyrighted work than is necessary" and the copying was [not] "excessive in relation to any valid purposes asserted under the first factor." *Campbell*, 510 U.S. at 586–87. Use of the entire original work is fair when the use is for a news story or transformative to illustrate a historical fact. Again, as discussed above, Defendant used no more of the Photograph as necessary to report the news of Ms. Wozniacki's retirement. *See Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 24 (1st Cir. 2000) (while the Defendant "admittedly copied the entire picture; however, to copy any less than that would have made the picture useless to the story. As a result …we count this factor as of little consequence to our analysis."). And again, the embedding of the Instagram Post did not replace the use of a headline photo of Ms. Wozniacki, because defendant included a separate photo of Ms. Wozniacki above the embedded Instagram Post.

### D. Potential Effect of the Use on the Market or Value

This factor "focuses on whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original. *Capitol Records, LLC v. ReDigi Inc.*, 910 F.3d 649, 662 (2d Cir. 2018) (*quoting TVEyes*, 883 F.3d

at 179); *see also*, *Blanch*, 467 F.3d at 258 *quoting*, *NXIVM Corp.*, 364 F.3d at 482 ("In considering the fourth factor, our concern is…whether the secondary use usurps the market of the original work.").

The Supreme Court has held that this factor is "undoubtedly the single more important elements of fair use" (*quoting Harper & Row Publishers, Inc.,* 471 U.S. at 566).

It is implausible to believe Defendant's use of the Photograph in its embedded post would supplant the market, for licensing the Photograph. Defendant used a cropped, low-resolution version of the Photograph as embodied in the Registration. Further, Defendant did not use the Photograph alone. The Photograph is shown through Ms. Wozniacki's Instagram Post and Defendant's use contains, among other items, Ms. Wozniacki's Instagram handle and the caption she posted along with the Photograph. See *Walsh*, 2020 WL 2837009 at *8 ("Here, because the Photograph did not appear on its own, but as part of the Post, alongside text and another image, it is implausible that Defendant's use would compete with Plaintiff's business or affect the market or value of her work.").

It is simply inconceivable that that someone looking to license or purchase the Photograph would turn to Defendant's Article including the embedded Instagram Post, featuring a cropped, low-resolution version of the Photograph instead of the Photograph itself, especially as Plaintiff has himself already freely posted it to the Facebook platform. Even if any market or value of the Photograph was diminished, it would be diminished by the use made by Ms. Wozniacki in her Instagram Post, not the corresponding embedding of the Instagram Post by Defendant.

Lastly, Plaintiff has posted the Photograph to his public Facebook several times, further confirming that there is little to no value in the public posting of these photos on Facebook or Instagram:



See Exhibit A.

### E. Totality of Factors

Based on the foregoing factors, is it evident that Defendant's use was fair as a matter of law. Defendant's use was transformative, the work was already published, and there is no plausible risk to any market for licensing of the original Photograph.

**POINT II**
**PLAINTIFF'S DEMAND FOR STATUTORY FEES AND ATTORNEY FEES FAILS AS**
**A MATTER OF LAW DUE TO PLAINTIFF'S LATE COPYRIGHT REGISTRATION**

17 U.S.C.A § 412 provides in relevant part that "no award of statutory damages or attorney's fees, as provided by section 504 and 505, shall be made for … (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." *17 U.S.C.A § 412*.

Plaintiff asserts infringement of Copyright Registration Number VA 2-190-386. Review of the public catalog of the Copyright Office for this registration number reveals that the two photographs described by this registration were created in 2002, and were first published on December, 4 2002. The effective date of registration for these photographs was not until December 27, 2019, approximately 17 years later. See DE 20, **Exhibit C**.

Plaintiff alleges that Defendant infringed on his copyright when Defendant ran the Article embedding the Instagram Post, which featured the Photograph on December 9, 2019, 18 days prior to the effective registration date. Because the registration was not made within three months after the first publication of the work, 17 U.S.C.A. § 412 directly applies here.

Therefore, pursuant to 17 U.S.C.A § 412, Plaintiff is barred from collecting statutory damages, punitive damages, and attorneys' fees as demanded in paragraph 24, and in the Prayer for Relief (4-5) of the Amended Complaint. Correspondingly, this Court should dismiss the Complaint, at least in part, to the extent it seeks statutory damages, punitive damages, and attorneys' fees.

**ARGUMENT ON MOTION FOR BOND**

**PLAINTIFF SHOULD BE REQUIRED TO POST A BOND IN THE AMOUNT OF**
**$50,000 AS SECURITY FOR DEFENDANT'S COSTS AND ATTORNEYS' FEES**

14

Local Civil Rule 54.2 provides that "the Court, on motion or its own initiative, may order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate. "Generally, in ordering a bond for costs, courts consider (1) the non-movant's financial condition and ability to pay; (2) whether that party is a non-resident or foreign corporation; (3) the merits of the action; (4) the extent and scope of discovery; (5) the expected legal costs to be incurred; and (6) the non-movant's compliance with prior court orders." *N'Jai v. New York State Higher Educ. Services Corp.*, 214 F.R.D. 251, 251-52 (E.D.N.Y. 2003); see also *Teri v. Oxford Mgt. Services, Inc.*, 2013 WL 132660, at *2 (E.D.N.Y. 2013).

### A.  Plaintiff's Claim is Meritless

As demonstrated above, Plaintiff's claim lacks merit making Defendant the likely prevailing party and entitling Defendant to costs and attorneys' fees.  *See*, *Selletti v. Carey*, 173 F.3d 104, 110 (2d Cir. 1999) (costs and attorney's fees may be awarded to the prevailing party in a copyright action). As alleged in the Amended Complaint (DE 20 at ⁋ 5), Plaintiff is domiciled in Denmark which would make it difficult to enforce a New York judgment against him. *See e.g.*, *Sadhu Singh Hamdard Tr. v. Ajit Newspaper Adv., Mktg. & Communications, Inc.*, 2008 WL 11415934, at *3 (E.D.N.Y. 2008).

### B.  Other Factors to Consider

Multiple courts, on their own initiative, have ordered Mr. Liebowitz to show cause why he should not be required to post security for costs as a condition of proceeding further with an action. See, e.g., *Pereira v. Kendall Jenner, Inc.*, 17-cv-6945, Dkt. No. 16 (S.D.N.Y. 2017) (Mr. Liebowitz voluntarily dismissed the case before responding to the Judge Abrams' Show Cause Order); *Cruz v. Am. Broad. Cos.*, 2017 WL 5665657, (S.D.N.Y. 2017) (Mr. Liebowitz informed the court that the parties had settled the case before responding to Judge Kaplan's Show Cause

Order); *see also Tabak v. Idle Media, Inc.*, No. 17-cv-8285 (AT) (Oct. 31, 2017) (Judge Torres ordered Mr. Liebowitz to show cause why the action should not be transferred. Mr. Liebowitz voluntarily dismissed the case before responding to the Order to Show Cause.)

Moreover, the Liebowitz Law Firm is notorious for filing thousands of copyright cases, many of which were determined to be meritless or were suspected to have been filed without investigation of the veracity of the claims, the amount of potential recovery, and the available defenses. *See, e.g.*, *Cruz*, 2017 WL 5665657, at *2; n.11 (on the court's own motion, ordering plaintiff to show cause why a security bond should not be imposed due to the apparent strength of a fair use defense); *Konangataa v. NBCUniversal Media, LLC*, 2017 WL 2684067, at *2 (S.D.N.Y. 2017) (awarding defendants their attorneys' fees in a case that "no reasonable lawyer with any familiarity with the law of copyright could have thought that [the use at issue] . . . was anything but fair"); *Janik v. Spin Media, Inc.*, 2017 WL 6021644, at *1 (S.D.N.Y. 2017) (plaintiff represented by Mr. Liebowitz voluntarily dismissed his case with prejudice). Defendant also points the Court to DE 8 filed on this docket by Plaintiff's counsel.

### C.  FRCP Rule 68's Cost-Shifting Provision

Notwithstanding the above, even if Plaintiff is the prevailing party, Plaintiff will still be required to pay Defendant's attorneys' fees due to the cost-shifting provision of Rule 68. "Under Rule 68 of the Federal Rules of Civil Procedure, a party "may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." [  ] If the judgment ultimately obtained by the plaintiff "is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." In a copyright action, "costs" includes attorneys' fees". *Lee v. W Architecture and Landscape Architecture, LLC*, 2019 WL 2272757, at *4 (E.D.N.Y. 2019).

As argued above, due to Plaintiff's late registration of its copyright, Plaintiff is limited to collecting its actual costs (and any demand for statutory damages or attorneys' fees should be dismissed or struck from the Complaint, as argued, supra in Section II). As depicted on Plaintiff's website, the costs to download Plaintiff's sport photographs is approximately $11.77. **Exhibit D**. A typical commercial license fee for such a photo would be in a similar range. Thus, in the event that Plaintiff does prevail on his claim, it is evident that his actual costs (a purported license fee) will be much less then Defendant's Rule 68 offer which was for the amount of $1,001, making Plaintiff liable to Defendant for Defendant's costs and attorneys' fees. Even if this Court does not entirely dismiss Plaintiff's Complaint, this Court should still require Plaintiff to post a bond until the conclusion of this action.

An appropriate amount of a bond would be $50,000 based upon a reasonable expectation of litigation costs that Defendant will incur to defend this case through summary judgment or trial.

## **CONCLUSION**

Based on the foregoing, Defendant is entitled to (i) a dismissal of the Amended Complaint as a matter of law pursuant to the Federal Rules of Civil Procedure Rule 12(b); (ii) an award attorneys' fees and costs as prevailing parties pursuant to 17 U.S.C. § 505; and (iii) an Order requiring Plaintiff, Plaintiff to post a bond as security for costs and attorneys' fees under Local Civil Rule 54.2.

Respectfully submitted,

**Falcon Rappaport & Berkman, PLLC**

/s/Moish E. Peltz
By:    Paul M. O'Brien (PO1990)
        Moish E. Peltz
        *Attorneys for Defendant*
1185 Avenue of the Americas, Third Floor

17

New York, New York 10036

265 Sunrise Highway, Suite 50
Rockville Centre, New York 11570