```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------   X
                                                                         :
MICHAEL BARRETT BOESEN,                                                  :   20-CV-1552 (ARR) (SIL)
                                                                         :
                        Plaintiff,                                       :
                                                                         :
         -against-                                                       :   OPINION & ORDER
                                                                         :
UNITED SPORTS PUBLICATIONS, LTD.,                                        :
                                                                         :
                        Defendant.                                       :
                                                                         X
----------------------------------------------------------------------
```

ROSS, United States District Judge:

Defendant, United Sports Publications, Ltd., moves to dismiss this copyright infringement action under Federal Rule of Civil Procedure 12(b)(6) and moves for bond under Local Rule 54.2. *See* Def.'s Mem. Supp. Mot. Dismiss & Bond ("Def.'s Br."), ECF No. 22. It argues its embedding of an Instagram post by professional tennis player Caroline Wozniacki that featured a copyrighted photograph taken by plaintiff, Michael Barrett Boesen, is protected by the fair use doctrine. *Id*. at 5–13. It also argues bond is appropriate because plaintiff's counsel, Richard Liebowitz, frequently violates court orders. *Id.* at 14–17. Plaintiff opposes, claiming at minimum a more developed factual record is needed to evaluate the fair use defense here, and in any event, it will fail. Pl.'s Opp'n, ECF No. 24. Plaintiff also claims bond is unwarranted because he will prevail and regardless defendant has failed to show plaintiff's lawsuit was improperly motivated. *Id.* at 22–25.

I grant defendant's motion to dismiss because I find the fair use defense established on the face of the complaint. Accordingly, I deny defendant's motion for bond. Defendant is free to move for attorneys' fees, and I expect plaintiff and his counsel to comply with any orders I may issue on that motion.

1

## BACKGROUND

The following facts, drawn from plaintiff's September 22, 2020 amended complaint, are presumed to be true for the purpose of this motion to dismiss. *See, e.g.*, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).

On December 6, 2019, professional tennis player Caroline Wozniacki announced her retirement from the sport on her Instagram page. Am. Compl. ¶ 16, ECF No. 20; Instagram Post, ECF No. 20-4 (annexed as Ex. D to Am. Compl.). The post included a cropped low-resolution version of a photograph taken by plaintiff, Michael Barrett Boesen, a professional photographer based in Denmark. Am. Compl. ¶¶ 5, 12, 16. The photograph, taken in 2002, shows a young Wozniacki preparing to serve. Photograph, ECF No. 20-1 (annexed as Ex. A to Am. Compl.); Website, ECF No. 20-2 (annexed as Ex. B to Am. Compl.).

 

*Figure 1: Wozniacki's December 6, 2019 Instagram Post.*     *Figure 2: Plaintiff's Original Photograph.*

That same day, defendant, United Sports Publications Ltd., a sports news publisher, ran an article on the Long Island Tennis Magazine website covering Wozniacki's retirement announcement. Am. Compl. ¶¶ 9, 17; Article, ECF No. 20-5 (annexed as Ex. E to Am. Compl.). The article quoted the text of the Instagram post and summarized Wozniacki's career. *See* Article. It noted she "ha[d] accumulated more than 630 singles victories and 30 titles, including her lone

2

Grand Slam title in Melbourne in 2018," and in "[t]hat same year, she was diagnosed with rheumatoid arthritis, and battled injuries in 2019 where she played only 35 matches." *Id.* at 2.

To accompany this commentary, the article "embedded" Wozniacki's original Instagram post featuring a cropped version of plaintiff's photograph.[1] *Id.*; Am. Compl. ¶ 17. Defendant did not license the photograph from plaintiff, nor did it have permission to publish the work on its website. Am. Compl. ¶ 19. Defendant subsequently registered a copyright on the photograph that became effective December 27, 2019. *Id.* ¶ 15; Copyright Registration, ECF No. 20-3 (annexed as Ex. C to Am. Compl.).



*Figure 3: Screenshots of Contested Article.*

Plaintiff filed the instant copyright infringement suit on March 25, 2020. *See* Compl., ECF No. 1. Defendant answered the original complaint on July 15, 2020,[2] *see* Answer, ECF No. 7, then

---

[1] An "embedded" image is one that "hyperlink[s] . . . to [a] third-party website." *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 587 (S.D.N.Y. 2018). "To embed an image, [a] coder or web designer . . . add[s] an 'embed code' to the HTML instructions; this code directs the browser to the third-party server to retrieve the image." *Id.* "[T]he image appears on the new page, but links to and remains hosted on the third-party server or website." *Walsh v. Townsquare Media, Inc.*, No. 19-CV-4958 (VSB), 2020 WL 2837009, at *2 n.4 (S.D.N.Y. June 1, 2020).
[2] Defendant submits that it offered plaintiff a Rule 68 judgment of $1,001 on July 15, 2020, and

3

sought permission to file a motion to dismiss and motion for bond on August 25, 2020, *see* Letter Requesting Pre-Motion Conference, ECF No. 11. I granted permission on September 2, 2020 but instructed defendant to fashion its motion to dismiss as one for judgment on the pleadings. Text Order (Sept. 2, 2020). The parties then agreed to plaintiff filing an amended complaint, which he did on September 22, 2020. *See* Am. Compl. Rather than answering the amended complaint, defendant filed the instant motion to dismiss and motion for bond on October 7, 2020. *See* Def.'s Br. Plaintiff opposed on October 20, 2020, Pl.'s Opp'n, and defendant replied on October 27, 2020, Def.'s Reply, ECF No. 25.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In reviewing a complaint under Rule 12(b)(6), I must "constru[e] [it] liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (citation omitted). I may consider only those "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). "Affirmative defenses may be adjudicated at this stage in the litigation . . . where the facts necessary to establish the defense are evident on the face of the complaint." *Kelly-Brown*

---

plaintiff rejected it. Rule 68 Offer, ECF No. 22-3 (annexed as Ex. B to Declaration of Moish E. Peltz ("Peltz Decl.")).

4

*v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013).

Further, under Local Rule 54.2, I have discretion to order a party to pay bond as security for "attorneys' fees to which a party is potentially entitled by statute." *Lee v. W Architecture & Landscape Architecture, LLC*, No. 18-CV-5820 (PKC) (CLP), 2019 WL 2272757, at *1 (E.D.N.Y. May 28, 2019). In determining whether a bond for these fees is appropriate, courts consider "(1) the financial condition and ability to pay of the party who would post the bond; (2) whether that party is a resident or foreign corporation; (3) the merits of the underlying claims; (4) the extent and scope of discovery; (5) the legal costs expected to be incurred; and (6) compliance with past court orders." *Teri v. Oxford Mgmt. Servs.*, No. 05-CV-2777 (DRH) (WDW), 2013 WL 132660, at *2 (E.D.N.Y. Jan. 10, 2013) (citation omitted).

## DISCUSSION

### I. Defendant's Embedding of the Instagram Post Featuring Plaintiff's Copyrighted Photograph Constitutes Fair Use.

A defendant may defeat a claim of copyright infringement if it shows the "fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching . . . , scholarship, or research." *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476 (2d Cir. 2004) (quoting 17 U.S.C. § 107). In evaluating fair use, courts must consider:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. "[A]ll factors must be explored and the results weighed together in light of the

5

purposes of copyright and the fair use defense." *NXIVM*, 364 F.3d at 477. Taken together, I find applying these factors to the complaint establishes that defendant's use of plaintiff's photograph was fair.

### A. Purpose and Character of the Use

First, I must determine whether defendant's use of the contested work was "transformative," taking into account any "commercial purpose."[3] *NXIVM*, 364 F.3d at 477. "The central purpose of this investigation is to see . . . whether the new work merely supersede[s] the objects of the original creation . . . or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message . . . ." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (alteration in original) (citations and quotation marks omitted). In other words, "[a] use is transformative if it does something more than repackage or republish the original copyrighted work." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 96 (2d Cir. 2014).

"[C]ourts have held that it is not fair to 'use [] an image solely to present the content of that image, in a commercial capacity,' or to otherwise use it 'for the precise reason it was created.'" *Walsh v. Townsquare Media, Inc.*, No. 19-CV-4958 (VSB), 2020 WL 2837009, at *4 (S.D.N.Y. June 1, 2020) (quoting *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 407 (S.D.N.Y. 2016)). "However, use of a copyrighted photograph may be appropriate where 'the copyrighted work is itself the subject of the story, transforming the function of the work in the new context.'" *Id.* (quoting *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017)).

---

[3] Defendant asserts that I may consider allegations of bad faith under this factor. Def.'s Br. 9–10. But I need not do so here because plaintiff has not raised any such allegations.

Applying these standards at the motion to dismiss stage, one court in the Southern District of New York found that embedding an Instagram post featuring a copyrighted photo in an article reporting on the post itself was transformative. *Id.* at *4–6. In that case, defendant publication Townsquare Media had published an article reporting on celebrity rapper Cardi B's Instagram post announcing that her lipstick collaboration with Tom Ford had sold out. *Id.* at *2. The article embedded the original post, featuring a copyrighted photo by plaintiff photographer Rebecca Fay Walsh. *Id.* at *1, *2. The court reasoned that the article created new meaning for the photograph because:

> Defendant did not publish the Photograph simply to present its content. It did not use the Photograph as a generic image of Cardi B to accompany an article about Cardi B . . . or as an image of her at Tom Ford's fashion show alongside an article about the fashion show . . . . Rather, Defendant published the Post, which incidentally contained the Photograph, because the Post—or, put differently, the fact that Cardi B had disseminated the Post—was the very thing the Article was reporting on.

*Id.* at *5 (footnote omitted) (citations omitted).

I agree with this reasoning and apply it here. On its face, defendant's article reported on Wozniacki's retirement announcement and the fact that it took place on Instagram. *See* Article 1–2. The article did not use plaintiff's photograph "as a generic image" of Wozniacki, nor to depict her playing tennis at a young age. *See Walsh*, 2020 WL 2837009, at *5. Rather, it embedded the Instagram post announcing her retirement—which incidentally included the photograph—because "the fact that [Wozniacki] had disseminated" that post "was the very thing the Article was reporting on." *Id.* This angle sufficiently transformed the work to support a defense of fair use.

Moreover, defendant's status as a "for-profit publisher" does not diminish the transformative nature of the work. Am. Compl. ¶ 9. The Second Circuit has recognized that "[a]lmost all newspapers, books and magazines are published by commercial enterprises that seek

7

a profit," and thus has "discounted this consideration where the link between [the defendant]'s commercial gain and its copying is . . . attenuated such that it would be misleading to characterize the use as commercial exploitation." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 83 (2d Cir. 2014) (alterations in original) (citations and internal quotation marks omitted). Here, plaintiff has not alleged that defendant derived any commercial benefit from embedding the post beyond its being a for-profit entity and its publishing the article alongside advertisements. Am. Compl. ¶ 9; Pl.'s Opp'n 14–15 (citing Article). Merely speculating that defendant has generated "profits, income, receipts, or other benefits" from a work's use, Am. Compl. 5 ¶ 3, does not show a sufficient "link between [the defendant]'s commercial gain and its copying" that lessens the weight of the article's transformative nature, *Swatch*, 756 F.3d at 83. Nor does the presence of advertisements establish such a connection. *Walsh*, 2020 WL 2837009, at *5.

Plaintiff argues I should allow him to develop the factual record to determine if defendant's use was transformative, citing cases involving videos where the defendant's purpose for using the copyrighted work was unclear on the face of the complaint. Pl.'s Opp'n 5–8 (citing *Coleman v. Home Box Office, Inc.*, No. 18-CV-3510 (MKB), 2019 WL 8645387, at *6 (E.D.N.Y. Aug. 6, 2019); *Hirsch v. CBS Broad. Inc.*, No. 17-CV-1860 (PAE), 2017 WL 3393845, at *6 (S.D.N.Y. Aug. 4, 2017)).[4] These cases do not apply here because it is obvious from comparing the contested print article to the original photograph—both of which are appended to the complaint—that the article's purpose is to report on Wozniacki's announcing her retirement on Instagram, not to describe Wozniacki playing tennis. *See Clark v. Transp. Alts., Inc.*, No. 18-CV-9985 (VM), 2019

---

[4] The quotation plaintiff invokes from *A.V.E.L.A., Inc. v. Est. of Marilyn Monroe*, 131 F. Supp. 3d 196, 210 (S.D.N.Y. Sept. 18, 2015), misconstrues the Second Circuit's decision in *Kelly-Brown*, which expressly held that fair use may be adjudicated on a motion to dismiss "where the facts necessary to establish the defense are evident on the face of the complaint." 717 F.3d at 308.

WL 1448448, at *2 (S.D.N.Y. Mar. 18, 2019) (holding the court could adjudicate fair use on a motion to dismiss by analyzing "side-by-side" the original photograph and allegedly infringing blog post, both of which were appended to the complaint (quoting *Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013))). No further factual development could change that determination.

Regardless, plaintiff objects that defendant's reporting on Wozniacki's retirement, "as opposed to [her] performance in a tennis match, is a distinction without a difference." Pl.'s Opp'n 12. He characterizes the photograph as "an illustrative device to describe factual events surrounding Wozniacki['s] retirement," attempting to analogize this case to those where courts found news stories reporting on the subject of a copyrighted work not to be transformative. *Id*. at 11–14, 12 n.2. Plaintiff's argument might succeed if the photograph depicted Wozniacki at a podium announcing her retirement, but instead it shows her playing tennis as a young teenager. *See* Photograph. But for Wozniacki's choice to include the photograph in her Instagram retirement announcement, it would make no sense as "an illustrative device" in defendant's article. Therefore, defendant did not use the work "for the precise reason it was created," *BWP Media USA*, 196 F. Supp. 3d at 407, but "transform[ed] the function of the work in [a] new context," *Barcroft*, 297 F. Supp. 3d at 352. This distinction makes all the difference.[5]

Plaintiff also cautions that if courts adopt *Walsh*'s reasoning then "news organizations [could] use social media posts as free grist to provide clickbait on their commercial websites." Pl.'s Opp'n 14. But that mischaracterizes the case. *Walsh*'s holding is narrow: embedding social media posts that incidentally use copyrighted images *in reporting on the posts themselves*

---

[5] I agree with plaintiff that newsworthiness alone does not trigger fair use, *see* Pl.'s Opp'n 9–10, which is why the purpose distinction is so crucial. However, contrary to plaintiff's arguments, Pl.'s Opp'n 12–13, lack of enlightened commentary on the work is not dispositive. *See Cariou*, 714 F.3d at 698; *Walsh*, 2020 WL 2837009, at *6.

transforms the original works, supporting a finding of fair use. *See* 2020 WL 2837009, at *5. This conclusion, which aligns with well-settled case law, does not give publishers free reign to copy and paste copyrighted images at whim whenever they appear on Instagram or Facebook. Rather, it draws a line that balances photographers' interest in protecting their copyrights with reporters' interest in covering social media events. Thus, this factor strongly favors defendant.

### B. Nature of the Copyrighted Work

Second, I must evaluate the nature of the copyrighted work, although the Second Circuit has acknowledged that this factor "has rarely played a significant role in the determination of a fair use dispute." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015). Even plaintiff admits it "carries minimal weight" and only argues it is "likely neutral" here. Pl.'s Opp'n 15. In assessing this factor, I must consider "(1) whether the work is expressive or creative, . . . with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower." *Cariou*, 714 F.3d at 709–10.

As an image of a famous athlete playing sports, the photograph has "both informational and creative elements" because it "document[s] [a] subject" and involves "technical skill and aesthetic judgment." *BWP Media USA*, 196 F. Supp. 3d at 408; *see also Walsh*, 2020 WL 2837009, at *7. However, the photograph does not incur the same protections as an unpublished work because plaintiff has published it on his own social media page and website, in addition to Wozniacki's sharing it on her Instagram. *See* Facebook Screenshots, ECF No. 22-2 (annexed as Ex. A to Peltz Decl.);[6] Instagram Post; Website. For that reason, I conclude this factor tips slightly

---

[6] "[F]or purposes of a 12(b)(6) motion to dismiss, [I] may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination . . . ." *Hesse v. Godiva Chocolatier, Inc.*,

in defendant's favor.

### C. Amount and Substantiality of the Portion Used

Third, I must consider "the proportion of the original work used" to determine "whether the quantity and value of the materials used[] are reasonable in relation to the purpose of the copying." *Cariou*, 714 F.3d at 710 (alteration in original) (citation and quotation marks omitted). Here, by embedding the post, defendant did not control how the photograph would be presented. Wozniacki chose to crop the image and use a lower resolution version of it—choices that in themselves tip this factor slightly in defendant's favor. *Compare* Instagram Post, *with* Photograph. Moreover, the embedded post retained all the markings of Instagram—i.e., Wozniacki's avatar, her profile name, the accompanying text—which further dilute the image. *See* Article 2.

Plaintiff argues defendant could have "commissioned its own freelance photojournalist to photograph Wozniacki," "published its news story without any photograph(s) whatsoever," or "obtained a license directly from Plaintiff before publishing its story." Pl.'s Opp'n 17. But any of these options would defeat the purpose of the story: to inform readers about Wozniacki's retirement announcement on social media. Only reproducing that post could achieve that aim. *See Walsh*, 2020 WL 2837009, at *7. Thus, this factor favors defendant.

### D. Effect of Use on Market

Fourth, I must consider "whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the

---

No. 19-CV-972 (AJN), 2020 WL 2793014, at *3 (S.D.N.Y. May 29, 2020) (citations and quotation marks omitted). Plaintiff does not contest the authenticity of the Facebook posts defendant submitted and in fact admits to posting the photograph on social media. Pl.'s Opp'n 19. Thus, I may take judicial notice of these posts.

11

original." *Capitol Records, LLC v. ReDigi Inc.*, 910 F.3d 649, 662 (2d Cir. 2018) (citation and quotation marks omitted), *cert. denied*, 139 S. Ct. 2760 (2019). Here, as in *Walsh*, "because the Photograph did not appear on its own, but as part of the Post, alongside text . . . , it is implausible that Defendant's use would compete with Plaintiff's business or affect the market or value of h[is] work." 2020 WL 2837009, at *8; *see also Clark*, 2019 WL 1448448, at *4 (finding screenshot of news article including copyrighted photograph not to diminish the work's market because it contained the article's "headline, author byline, and photographer credit"). Additionally, the post used a cropped low-resolution version of the photograph that would be a poor substitute for the original. *See* Instagram Post. Thus, this factor favors defendant, as well.

Since all factors support the fair use defense, I dismiss plaintiff's complaint for failure to state a claim.[7]

## II. Bond Is Not Warranted.

Defendant argues I should order plaintiff to post bond on two bases: (1) defendant will prevail on its fair use defense; and (2) even if plaintiff prevails he will not recover more than the amount defendant offered to settle the case under Rule 68 and thus will owe defendant attorneys' fees. Def.'s Br. 14–17. Because I have dismissed plaintiff's claim under Rule 12(b)(6), I need not consider defendant's second basis for seeking bond.

As to the first, I have discretion to order bond here because under the Copyright Act, I may "award a reasonable attorney's fee to the prevailing party as part of the costs," and I have determined that defendant is the prevailing party. 17 U.S.C. § 505; Local Rule 54.2; *see also Selletti v. Carey*, 173 F.3d 104, 110 (2d Cir. 1999). On balance, however, I do not find bond

---

[7] Because I dismiss plaintiff's complaint, I need not consider defendant's argument that plaintiff is not entitled to statutory damages due to registering his copyright late. Def.'s Br. 14.

appropriate now.

While plaintiff is a domiciliary of Denmark, his counsel is located in New York and is accountable for ensuring compliance with my orders. I acknowledge that plaintiff's counsel has violated court orders numerous times before, *see, e.g.*, *Rice v. Musee Lingerie, LLC*, No. 18-CV-9130 (AJN), 2019 WL 2865210, at *3 (S.D.N.Y. July 3, 2019) (collecting cases), *reconsideration denied*, No. 18-CV-9130 (AJN), 2019 WL 6619491 (S.D.N.Y. Dec. 5, 2019), but he has been censured forcefully and appropriately for that conduct, *see Usherson v. Bandshell Artist Mgmt.*, No. 19-CV-6368 (JMF), 2020 WL 3483661, at *22 (S.D.N.Y. June 26, 2020). Moreover, even though I have dismissed plaintiff's claim, I do not find it so "questionable," *Selletti*, 173 F.3d at 110–11, as to require imposing bond when defendant may move for attorneys' fees immediately. Further, if defendant brings a motion for attorneys' fees and prevails, the costs awarded should not be too onerous at this early stage of litigation.[8] *See* Answer; Minute Entry, ECF No. 16; Scheduling Order, ECF No. 17; Def.'s Br.; Def.'s Reply. For these reasons, taken together, I find bond inappropriate at this juncture, but I stress that if I ultimately order plaintiff to pay defendant's attorney's fees, I will not tolerate noncompliance with that order.

## CONCLUSION

For the foregoing reasons, I grant defendant's motion to dismiss for failure to state a claim and deny defendant's motion for bond. The Clerk of Court is directed to enter judgment accordingly and close the case.

SO ORDERED.

|  |  |  |
|---|---|---|
| Dated: | November 2, 2020<br>Brooklyn, New York | ____/s/_____<br>Allyne R. Ross<br>United States District Judge |

---

[8] The record lacks any evidence of plaintiff's financial means.