UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MICHAEL BARRETT BOESEN,

                Plaintiff,

- against –

UNITED SPORTS PUBLICATIONS, LTD.

                Defendant.

2:20-cv-01552 (ARR-SIL)

Hon. Allyne R. Ross


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OR REARGUMENT PURSUANT TO LOCAL RULE 6.3 AND RULE 60(b)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Pursuant to Local Civil Rule 6.3 and Rule 60(b)(1) of the Federal Rules of Civil Procedure, Plaintiff Michael Barrett Boesen ("Plaintiff" or "Boesen"), via counsel, respectfully submits this memorandum of law in support of Plaintiff's Motion for Reconsideration or Reargument of the District Court's Order, dated November 2, 2020, which dismissed Plaintiff's amended complaint as a matter of law upon a finding of fair use.

## PRELIMINARY STATEMENT

Plaintiff respectfully asks the Court to reconsider its decision concerning fair use on three independent grounds:

First, the Court overlooked that the holding in *Barcroft Media USA* applies to news reporting *about* the Photograph itself, not about a third-party social media post which happens to include a copyrighted work as an illustrative device.  Further, the fair use doctrine does not shield a news organization from liability where the Photograph is merely incidental to the news organization's First Amendment right to communicate its message.

Second, the Court has overlooked caselaw authority holding that the commercial advertisements displayed adjacent to a copyrighted work creates an inference of commercial use for purposes of analyzing the first factor.

Third, with respect to the fourth factor, the Court has overlooked that the secondary use at issue plainly usurps the actual and potential market for the Photograph, as a website dedicated to reporting news about professional tennis and its players is the exact same market that the Photograph at issue occupies.  If Plaintiff is foreclosed from earning licensing fees from a commercial website which reports on the activities on professional tennis players, then the copyright protection accorded to the Photograph will be eradicated.

Accordingly, Plaintiff respectfully requests that the Court vacate its decision and order and permit this case to proceed to discovery on the merits.

## LEGAL STANDARD

A party seeking reconsideration or reargument pursuant to Local Civil Rule 6.3 must demonstrate that the Court overlooked controlling decisions or factual matters "that might materially have influenced its earlier decision." *See Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995) (to prevail on a motion for reconsideration, the movant must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."). In the alternative, the movant must "demonstrate the need to correct a clear error or prevent manifest injustice." *Sanofi-Synthelabo v. Apotex, Inc.,* 363 F. Supp. 2d 592, 594 (S.D.N.Y. 2005).

Rule 60(b)(1) of the Federal Rules of Civil Procedure provides in relevant part that "the court may relieve a party . . . from a[n] . . . order . . . for the following reasons: (1) mistake . . ." Fed. R. Civ. P. 60(b)(1). "Rule 60(b)(1) motions premised upon 'mistake' are intended to provide relief to a party when the judge has made a substantive mistake of law or fact in the final judgment or order." *Lugo v. Artus*, No. 05-cv-1998 (SAS), 2008 WL 312298, at *2 (S.D.N.Y. Jan. 31, 2008) (citation and internal quotations omitted). "Thus, Rule 60(b)(1) motions can be used by a trial court to correct judicial errors." *Id., citing International Controls Corp, v. Vesco,* 556 F.2d 665, 670 (2d Cir. 1977) (stating that district court's mistake of "substantive legal nature" may be corrected under Rule 60(b)(1)); *see also Kingvision Pay-Per-View Ltd. v. Lake Alice Bar,* 168 F.3d 347, 350 (9th Cir. 1999) ("[T]he words 'mistake' and 'inadvertence' . . . may include mistake and inadvertence by the judge.")

Relief under 60(b)(1) is also appropriate where a court may have overlooked certain

3

parties' arguments or evidence in the record. *See, e.g., Rumsey v. New York State Dep't of Corr. Servs.,* 580 F.Supp. 1052 (N.D.N.Y.1984) (granting 60(b)(1) motion where court may have overlooked triable issues of fact). As more fully detailed below, Plaintiff's motion for reconsideration or reargument pursuant to Local Civil Rule 6.3 and Rule 60(b)(1) satisfies the applicable standards.

## ARGUMENT

**POINT I:   THE COURT HAS OVERLOOKED THAT THE *BARCROFT* STANDARD IS APPLICABLE TO NEWS STORIES ABOUT THE COPYRIGHTED WORK ITSELF – NOT INCIDENTAL USES**

In its decision and order, the Court begins its transformative inquiry by citing to *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) for the proposition that "use of a copyrighted photograph may be appropriate where 'the copyrighted work is itself the subject of the story'"). [Dkt. #26, p. 6]

Specifically, the *Barcroft* court explained as follows:

Display of a copyrighted image or video may be transformative where the use serves to illustrate criticism, commentary, or a news story *about* that work. *See* 17 U.S.C. § 107. For instance, a news report about a video that has gone viral on the Internet might fairly display a screenshot or clip from that video to illustrate what all the fuss is about. *See, e.g.*, *Konangataa v. Am. Broadcasting Companies, Inc.*, No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017). Similarly, a depiction of a controversial photograph might fairly accompany a work of commentary or criticism about the artistic merit or appropriateness of the photograph. *See, e.g.*, *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 25 (1st Cir. 2000). In each such case, the copyrighted work is itself the subject of the story, transforming the function of the work in the new context.

*Barcroft Media, Ltd.,* 297 F. Supp. 3d at 352.

However, the Court misapplied this fundamental standard because unlike the cases in *Konangataa* and *Nunez*, the Defendant's news story was not about the copyrighted work at

4

issue in this case. The Photograph itself, depicting a young Caroline Wozniacki, was not subject to any social or political controversy which warranted Defendant's news report. The Photograph itself was not being criticized or commented upon for its artistic merit. Indeed, the Photograph was not the subject of the Defendant's news story at all. The subject of the Defendant's article was the news of Wozniacki's retirement, not news about the Photograph. Because Defendant's use here does not fall within any of the accepted uses identified by *Barcroft, Konangataa* and *Nunez*, the Court's decision should be reconsidered.

      The Court's reliance on *Walsh v. Townsquare Media, Inc.*, No. 19-CV-4958 (VSB), 2020 WL 2837009, at *4 (S.D.N.Y. June 1, 2020) should be reconsidered. That case, which is currently subject to a motion for reconsideration, expanded the *Barcroft* holding to include news reporting about third-party social media posts which happen to incorporate a copyrighted work (without authority from the copyright holder). *Walsh's* holding is detrimental to the purpose of the Copyright Act because it allows commercial news organizations to bypass the licensing marketing by expropriating photographs from social media users whose own conduct is infringing.

      In *Walsh,* the rapper Cardi B did not have a license to display the photograph on her Instagram account. Similarly, in this case, Wozniacki did not have a license to post Plaintiff's photograph to her social media profile. Neither Townsquare Media, nor Defendant in this case, should be permitted a free pass to take photographs from users who are themselves engaged in illegal activity. Such instances of "double theft" create an untenable slippery slope which undermines the protections accorded to copyright holders.

      In the context of commercial news reporting, a legal standard exists which delineates infringing use from fair use by confining the fair use doctrine to instances where the news report

5

is about the copyrighted work itself.  See, e.g., *Barcroft, Konangataa* and *Nunez*; see also *Clark v. Transportation Alternatives*, Inc., 18-cv-9985 (VM) 2019 WL 1448446 (S.D.N.Y. March 18, 2019) (fair use found where non-profit defendant used the plaintiff's photograph to criticize the New York Post's journalistic use of the photograph). Expanding the fair use doctrine beyond this standard, by permitting news organizations to use "composite screenshots" or "embedded links" made by infringing third parties, sets an unfair precedent that should not be upheld.

The Court also noted that Defendant's use of the Photograph was merely "incidental" to its news story.  [Dkt. #26, p. 7]  But that's precisely why Defendant should not be able to claim refuge under the fair use doctrine which, at bottom, serves as a vehicle to protect the secondary user's First Amendment rights.  *See, e.g.*, *Eldred v. Ashcroft*, 537 U.S. 186, 190 (2003) (holding that the codified fair use doctrine under section 107 "contains built in First Amendment accommodations."); *Roy Export Co. Establishment v. Columbia Broadcasting System, Inc.*, 672 F.2d 1095, 1099 (2d Cir.), *cert. denied*, 459 U.S. 826, (1982) ("[n]o Circuit that has considered the question . . . has ever held that the First Amendment provides a privilege in the copyright field distinct from the accommodation embodied in the 'fair use' doctrine."); *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65, 74–75 (2d Cir. 1999) ("First Amendment concerns are protected by and coextensive with the fair use doctrine.").

Consistent with this jurisprudence, secondary uses of copyrighted works which are not integral to the message conveyed should not be deemed fair use.  *See, e,.g.*, *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569 (1994) (finding that rap group's raunchy parody song of Roy Orbison's "Pretty Woman" was fair use, particularly as the rap group was entitled to "conjure up" the original to express its viewpoint); *see also Baraban v. Time Warner, Inc.,* No. 99 CIV. 1569 (JSM), 2000 WL 358375, at *4 (S.D.N.Y. Apr. 6, 2000) ("The photograph is

an <u>integral</u> part of that commentary because Mr. Baraban's artistic portrayal of the wholesome duo on the Ihlenfeldt farm makes the point that nuclear energy is safe in a way that words alone could not.") (underline added). Thus, the privilege to override a photographer's exclusive rights should only apply to secondary uses that are fundamental or integral to the news organization's First Amendment right to inform the public of a particular message.

Here, the Court's recognition that the secondary use of the Photograph was merely "incidental" (to both Wozniacki's post and Defendant's article) confirms that the Photograph was not integral to the Defendant's right to communicate the news of Wozniacki's retirement. The Photograph undoubtedly enhanced the look of Defendant's news article, but the public would have been informed of Defendant's message even without use of the Photograph.[1]

Permitting news organizations to use registered photographs without paying the customary fee, simply to enhance the look of their webpage (as opposed to communicating a core message), does not further the interests of the Copyright Act. Rather, it opens "Pandora's Box" of allowing commercial news organizations to use virtually any photograph without a license through the process of embedding third-party social media posts. The suspension of a copyright holder's exclusive rights under the fair use doctrine should be reserved for those cases where the secondary user is unable to exercise its First Amendment right in the absence of the photograph.

**POINT II:   THE COURT HAS OVERLOOKED THE COMMERCIAL PURPOSE OF DEFENDANT'S USE**

With respect to the first factor, the Court has also appeared to overlook the substantial authority cited in Plaintiff's opposition brief which holds that use of advertisements adjacent to

---

[1] To avoid an infringement claim, Defendant could have provided a hyperlink back to Wozniacki's original Instagram post, as is common practice in the wake of the *Goldman* case, rather than indulging in a full display of Plaintiff's image on Defendant's commercial website.

the display of a copyrighted work creates an inference of commercial use. *See, e.g., Hirsch v. Complex Media, Inc.*, No. 18-cv-5488 (CM), 2018 WL 6985227, at *6 (S.D.N.Y., December 10, 2018) (an inference of commercial use may be drawn where copyrighted work was displayed adjacent to advertisements); *Richard Feiner & Co., Inc. v. H.R. Industries, Inc.*, 10 F.Supp.2d 310, 314 (S.D.N.Y. 1998) (finding that commercial advertisements appearing alongside the unauthorized use of photographs demonstrated a defendant's commercial purpose).

Indeed, the Second Circuit has recognized this very principle. *Consumers Union of U.S., Inc. v. Gen. Signal Corp.,* 724 F.2d 1044, 1049 (2d Cir. 1983) (observing that some infringement actions involve copying of creative expression for "purpose of having that precise form of expression advance someone else's commercial interests -- for example, using well-known copyrighted lines to attract attention to an advertisement"). Thus, the Court should reconsider according the appropriate weight to Defendant's commercial use when analyzing the first factor.

### POINT III: THE COURT HAS OVERLOOKED THAT THE FOURTH FACTOR STRONGLY FAVORS PLAINTIFF

The fourth fair use factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). The Supreme Court declared in *Harper & Row* that "[t]his last factor is undoubtedly the single most important element of fair use." 471 U.S. at 566 (footnote and citation omitted). Yet, this factor has not been accorded substantial weight in the analysis.

Under prevailing Second Circuit law, Plaintiff is entitled to collect licensing fees in whatever reasonably expected potential markets may exist. *See Michael Grecco Prods., Inc. v. Valuewalk, LLC*, 345 F. Supp. 3d 482, 508–09 (S.D.N.Y. 2018) ("the inquiry [of the fourth factor] looks to whether infringement will affect the *potential* market for the copyrighted work in

"traditional, reasonable, or *likely to be developed* markets." (citing *Bill Graham Archives*, 448 F.3d at 614 (emphasis added). Here, not unlike the Second Circuit's decision in *TCA Television Corp. v. McCollum*, 839 F.3d 168, 186 (2d Cir. 2016), the Court "disregarded the possibility of defendants' use adversely affecting the licensing market for the" Photograph.

The Photograph at issue depicts a professional tennis player. Defendant's website operates to convey information about professional tennis and its players. Plaintiff can therefore expect to earn licensing revenues from commercial websites dedicated to professional tennis and articles about Caroline Wozniacki. Defendant should not be permitted to avoid paying for copyrighted content by simply re-publishing the Instagram post of a professional tennis player.

As per *Fitzgerald v. CBS Broad., Inc.*,

> <u>CBS's use of the photographs is paradigmatic of the only market the photographs could reasonably have: licensing to media outlets</u> . . . The market for media licenses for these photographs clearly exists, and is the only market in which the photographs have seen use: Various media outlets have used the photographs more than 20 times, resulting in over $60,000 in fees and settlements for exactly this kind of use . . . If the Court finds that CBS's use was fair use, then all of these media uses—and uses like them in the future—would also be fair use, destroying the only potential market that exists for the photographs. It is hard to imagine that freelance photojournalists would continue to seek out and capture difficult to achieve pictures if they could not expect to collect any licensing fees. This is exactly the kind of situation that copyright is meant to impact—where unrestricted use would likely dry up the source."

491 F. Supp. 2d 177, 189 (D. Mass. 2007) (underline added); *accord Michael Grecco Prods.*, 345 F. Supp. at 508–09 ("Because the images are substantially identical, publication by Defendants affect the market for the work—more supply, less demand. The publication can reasonably be expected to harm Plaintiff's ability to license the work for publication and use in derivative works.")

Finally, the Court's reliance on "composite screenshots" to support its analysis of the fourth factor is detrimental to copyright protection. Now, a downstream infringer only needs to

9

create a composite image to avoid having to obtain a license. This permits copyright infringers to engage in technical end-runs around Copyright law by shoplifting images by means of a composite screenshot.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully submits that the Court grant Plaintiff's motion for reconsideration and/or vacate its Order and allow this case to proceed on the merits.

Respectfully Submitted,

LIEBOWITZ LAW FIRM, PLLC

**s/richardliebowitz/**
Richard Liebowitz, Esq
11 Sunrise Plaza, Ste. 305
Valley Stream, NY 11580
(516) 233-1660
RL@LiebowitzLawFirm.com

*Counsel for Plaintiff*