UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
                                                :

MICHAEL BARRETT BOESEN,                 :        20-CV-1552 (ARR) (SIL)
                                                :

               *Plaintiff*,                :
                                                  :

      -against-                    :        **OPINION & ORDER**
                                                :

UNITED SPORTS PUBLICATIONS, LTD.,     :
                                                :

              *Defendant*.            :
                                              X
------------------------------------------------------------------

ROSS, United States District Judge:

In this copyright infringement action, plaintiff, Michael Barrett Boesen, moves to reconsider my November 2, 2020 opinion and order dismissing the instant case under Federal Rule of Civil Procedure 12(b)(6) because I found on the face of the complaint that defendant, United Sports Publications, Ltd., had used plaintiff's photograph fairly. *See Boesen v. United Sports Publ'ns, Ltd.*, No. 20-CV-1552 (ARR) (SIL), 2020 WL 6393010, at *3–7 (E.D.N.Y. Nov. 2, 2020). I deny plaintiff's motion because he has not met the standard for reconsideration either under Local Rule 6.3 or Federal Rule of Civil Procedure 60(b)(1).[1]

## LEGAL STANDARD

Local Rule 6.3 provides that a party may move to reconsider "a court order determining a motion." E.D.N.Y. Local R. 6.3. "A motion for reconsideration [under this rule] is an extraordinary request that is granted only in rare circumstances, such as where the court failed to consider evidence or binding authority." *Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 54 (2d Cir. 2019). "The standard for granting such a motion is strict, and reconsideration will generally be denied

---

[1] I assume familiarity with my November 2, 2020 opinion and order.

unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

Rule 60(b)(1) allows for relief from judgment based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). This rule "is available for a district court to correct legal errors by the court." *United Airlines, Inc. v. Brien*, 588 F.3d 158, 175 (2d Cir. 2009) (citation and quotation marks omitted). "Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986).

## DISCUSSION

Plaintiff raises three potential grounds for reconsideration: (1) that I misapplied *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339 (S.D.N.Y. 2017); (2) that I overlooked the commercial purpose of defendant's use; and (3) that I failed to consider the impact of defendant's use on the licensing market for plaintiff's photograph. Pl.'s Mot. Recons. 4–10 ("Pl.'s Br."), ECF No. 30. None of these arguments, however, constitutes "fail[ure] to consider evidence or binding authority." *Van Buskirk*, 935 F.3d at 54. Nor has plaintiff identified legal errors or shown "exceptional circumstances" that justify reconsideration. *Nemaizer*, 793 F.2d at 61.

### I.    I Applied *Barcroft* Reasonably.

Plaintiff argues that my reliance on *Barcroft* was misplaced because that case pertained only to news reporting about a copyrighted work itself, not to "a third-party social media post which happens to include a copyrighted work as an illustrative device." Pl.'s Br. 2. As an initial matter, *Barcroft* is not binding authority, but regardless, I applied the case reasonably.

As the court discussed in *Walsh v. Townsquare Media, Inc.*,[2] the key test to determine if

---

[2] Plaintiff notes that a motion to reconsider the *Walsh* decision, brought by the same counsel

unlicensed use of a copyrighted work is transformative is whether it "adds something new, with a further purpose or different character." 464 F. Supp. 3d 570, 580 (S.D.N.Y. 2020) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)). In line with this test, "courts have held that it is not fair to 'use [] an image solely to present the content of that image, in a commercial capacity,' or to otherwise use it 'for the precise reason it was created.'" *Id.* at 580–81 (alteration in original) (quoting *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 407 (S.D.N.Y. 2016)).

*Barcroft* provides an example of a transformative use of a copyrighted work that has a different purpose from the original: news reporting about a copyrighted work itself.[3] 297 F. Supp. 3d at 352. The cases on which *Barcroft* relied—*Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 25 (1st Cir. 2000), and *Konangataa v. Am. Broadcastingcompanies, Inc.*, No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017)—provide similar examples. Those scenarios stand in stark contrast to cases where media outlets report on "the *contents* of the photograph" which "rarely justif[ies] unlicensed reproduction." *BWP Media*, 196 F. Supp. at 406 n.6. Applying these cases, the court in *Walsh* determined that embedding an Instagram post that contained a copyrighted photograph in a news story about the post itself was more akin to reporting

---

representing plaintiff here, is pending. Pl.'s Br. 5; Pl.'s Reply 1, ECF No. 34. As discussed above, however, the standard for a motion to reconsider is exacting and such motions are "generally [] denied." *Shrader*, 70 F.3d at 257.

[3] Contrary to plaintiff's characterization, *Barcroft* did not hold that "fair use news reporting *must* be *about* the copyrighted work itself," Pl.'s Reply 2 (first emphasis added), only that "[d]isplay of a copyrighted image or video *may* be transformative where the use serves to illustrate . . . a news story *about* that work." 297 F. Supp. 3d at 352 (first emphasis added). Nor did *Barcroft* limit its holding to "controversial photograph[s]" but merely noted that commenting on an image's controversy could justify unlicensed use of that work. *Id.*; *see also Cariou v. Prince*, 714 F.3d 694, 706 (2d Cir. 2013) ("The law imposes no requirement that a work comment on the original or its author in order to be considered transformative . . . .").

on a copyrighted work than reporting on the *contents* of such a work. 464 F. Supp. 3d at 580–82. I agreed with that determination and applied it here: defendant's article did not report on a young Caroline Wozniacki playing tennis—the contents of plaintiff's photograph. Rather, it reported on her announcing her retirement in an Instagram post that happened to include plaintiff's photograph. *Boesen*, 2020 WL 6393010, at \*4. Thus, it was more akin to *Barcroft*, where the court found fair use, than to instances where a news organization reported on the contents of a photograph, which are not fair use. This reasoning not only aligned with *Walsh* but followed several cases that have drawn the distinction between reporting on a work and reporting on its contents. *See Walsh*, 464 F. Supp. 3d at 581–83 (citing cases).

Further, my determination that Ms. Wozniacki's Instagram post "incidentally included" plaintiff's photograph does not undermine the transformative nature of defendant's use. *Boesen*, 2020 WL 6393010, at \*4. Plaintiff argues, for the first time on reconsideration, that "secondary uses of copyrighted works which are not *integral* to the message conveyed should not be deemed fair use." Pl.'s Br. 6 (emphasis added). He does not support this proposition with any cases involving news reporting. *See id.* (citing *Campbell*, 510 U.S. at 580 (parody); *Baraban v. Time Warner, Inc.*, No. 99-CV-1569 (JSM), 2000 WL 358375, at \*3 (S.D.N.Y. Apr. 6, 2000) (commentary)). But even if this were the rule in that context, defendant's use was fair. While plaintiff's photograph of a young Ms. Wozniacki playing tennis may have been incidental to the fact of her retirement, it was an inextricable part of the Instagram post announcing her career change that was "itself the subject of the story." *Walsh*, 464 F. Supp. 3d at 582 (quoting *Barcroft*, 297 F. Supp. 3d at 352).[4] Accordingly, I decline to reconsider my application of *Barcroft*.

---

[4] Plaintiff suggests that defendant could have avoided unlicensed use by including a hyperlink to Ms. Wozniacki's Instagram post but instead embedded the post only to "display pictorial content within the four corners of [its] commercial space[]" without paying a fee. Pl.'s Reply 4. But like

## II.  I Evaluated Commercial Purpose Adequately.

Plaintiff claims I overlooked authority holding that "use of advertisements adjacent to the display of a copyrighted work creates an inference of commercial use." Pl.'s Br. 7–8. As I noted in my opinion, the Second Circuit has "discounted" commercial purpose "where the link between [the defendant]'s commercial gain and its copying is . . . attenuated such that it would be misleading to characterize the use as commercial exploitation," *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 83 (2d Cir. 2014) (alterations in original) (citations and quotation marks omitted). Accordingly, having found that defendant's use was transformative, I determined that "plaintiff ha[d] not alleged that defendant derived any commercial benefit from embedding the post beyond its being a for-profit entity and its publishing the article alongside advertisements," and held that those allegations alone did not overcome the transformative nature of the use. *Boesen*, 2020 WL 6393010, at *4.

The cases plaintiff cites do not undermine this reasoning. In *Consumers Union of United States, Inc. v. General Signal Corp.*, the Second Circuit noted that "[a]lmost all newspapers, books and magazines are published by commercial enterprises that seek a profit" such that fair use would be meaningless if general commercial purpose alone defeated it as a defense. 724 F.2d 1044, 1049 (2d Cir. 1983). The court even recognized that using unlicensed copyrighted works in advertisements themselves could be protected by fair use under some circumstances. *Id*. Merely displaying advertisements next to news reporting on a copyrighted work falls far short of using that work in an advertisement itself and thus cannot defeat a finding of transformative use.

Plaintiff's other cases also fail to show that the presence of advertisements overcomes

---

in *Walsh*, "[d]efendant published the Post in order to provide readers with the original social media interactions reported on by the Article," and a hyperlink would not achieve that same result. 464 F. Supp. 3d at 582.

transformative use. While the court in *Hirsch v. Complex Media, Inc.* noted that displaying the copyrighted photograph "adjacent to advertisements" contributed to an inference of commercial purpose, it already had found defendant's use was not transformative such that commercial purpose merely supported that conclusion. No. 18-CV-5488 (CM), 2018 WL 6985227, at *6 (S.D.N.Y. Dec. 10, 2018). Similarly, the court in *Richard Feiner & Co. v. H.R. Indus., Inc.* found the defendant's use of a copyrighted work lacked "a scholarly or critical purpose," which was reinforced by the fact that it appeared in a "section for special effects advertisers." 10 F. Supp. 2d 310, 314 (S.D.N.Y. 1998), *vacated on other grounds*, 182 F.3d 901 (2d Cir. 1999). Thus, I need not revisit my analysis of commercial purpose.

### III.    I Analyzed Market Harm Sufficiently.

Plaintiff claims I overlooked the fact that defendant, as a media outlet reporting on professional tennis, is the prime target for licensing his photograph such that finding fair use here would erode that market. Pl.'s Br. 8–9. "A court considering fair use properly identifies and weighs relevant harm to the derivative market for a copyrighted work, which market includes uses that creators of original works might license others to develop." *TCA Television Corp. v. McCollum*, 839 F.3d 168, 186 (2d Cir. 2016) (citation and quotation marks omitted). This analysis looks to the "impact on potential licensing revenues for traditional, reasonable, or likely to be developed markets." *Id.* (citation omitted).

Here, I had found little market harm because the cropped low-resolution version of the photograph that appeared alongside text in the Instagram post was "a poor substitute for the original." *Boesen*, 2020 WL 6393010, at *6. While I did not explicitly examine the potential impact of defendant's use on the licensing market, elsewhere in my opinion I rejected plaintiff's slippery-slope argument, *id.* at *5, and that conclusion applies equally to market harm. My reasoning

pertains only to embedding Instagram posts *when reporting on the posts themselves*.[5] *Id.* This is a small fraction of media organizations' news coverage such that allowing fair use in that narrow subset of cases does not come close to usurping the licensing market for stand-alone photographs. Even here, defendant licensed a stand-alone photograph of Ms. Wozniacki to accompany the article, on top of embedding her post. *See* Article, ECF No. 20-5 (annexed as Ex. E to Am. Compl.).

Plaintiff's cases are inapposite because they all involved works being used without a license for their original purpose. *See TCA Television*, 839 F.3d at 186; *Fitzgerald v. CBS Broad., Inc.*, 491 F. Supp. 2d 177, 189 (D. Mass. 2007); *Michael Grecco Prods., Inc. v. Valuewalk, LLC*, 345 F. Supp. 3d 482, 505 (S.D.N.Y. 2018). Here, I had found defendant's use to be transformative and its purpose to be distinct from that of the original. *Boesen*, 2020 WL 6393010, at *4. "[T]he more the copying is done to achieve a purpose that differs from the purpose of the original, the less likely it is that the copy will serve as a satisfactory substitute for the original" that erodes the work's potential market. *Authors Guild v. Google, Inc.*, 804 F.3d 202, 223 (2d Cir. 2015).

Finally, plaintiff claims I should not have relied on the presence of text and other markings of Instagram within the embedded post in determining that defendant's use did not diminish the photograph's market. Pl.'s Br. 9–10. He claims this reasoning "permits copyright infringers to engage in technical end-runs around Copyright law by shoplifting images by means of a composite screenshot." *Id.* at 10. But again my analysis is limited to news stories embedding social media posts to report on the posts themselves. *Boesen*, 2020 WL 6393010, at *5. This reasoning necessarily would not apply to news organizations manipulating images as an "end-run[]" to use

---

[5] Plaintiff mischaracterizes my holding as "permit[ing]" media organizations "to avoid paying for copyrighted content by simply re-publishing" social media posts. Pl.'s Br. 8. As I stressed in my opinion, my holding, in line with *Walsh*, allows embedding without a license only in limited instances of reporting on the social media posts themselves. *Boesen*, 2020 WL 6393010, at *5.

them. Pl.'s Br. 10. Thus, I decline to reconsider my analysis of market harm.

## CONCLUSION

For the foregoing reasons, I deny plaintiff's motion to reconsider my November 2, 2020

opinion and order.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:          December 22, 2020
                Brooklyn, New York